UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NORTHWEST ADMINISTRATORS, INC.,

    Plaintiff,

    v.

VINSON BROTHERS CORPORATION, a Washington corporation,

    Defendant.

CASE NO. C06-1762-JCC

ORDER

This matter comes before the Court on Plaintiff's Motion for Summary Judgment (Dkt. No. 28), Defendant's Opposition thereto (Dkt. No. 32), and Plaintiff's Reply (Dkt. No. 34). Having reviewed the materials submitted and found that oral argument is not necessary, Plaintiff's motion is GRANTED.

**I.    BACKGROUND**

Plaintiff is the administrator of the benefit trust fund for a local Teamsters union. Defendant was a subcontractor working under general contractor RCI Herzog on the Sounder Commuter and Link Light Rail Project.

Defendant and Plaintiff executed a series of agreements, under which Defendant was required to provide monthly accounting records and monthly employee benefit contributions to the union's benefit trust. Under those agreements, employers who are delinquent in providing such accounting records and

ORDER – 1

contributions are required to pay liquidated damages, interest, attorney's fees and costs. (Amendment to Teamster Construction Industry Welfare Trust (Dkt. No. 12-2 at 22)). Defendant argues it "had not worked on projects involving such an Agreement in the past, and [was] unfamiliar with the administration and operation of that Agreement." (Vinson Aff. (Dkt. No. 16) ¶ 2.)

In late 2005, Defendant fell behind in its payments to the trust. In order to protect itself from potential liability, RCI Herzog required that Defendant enter into a "Joint Check Agreement." (Supp. Ditter Decl. ¶ 4 (Dkt. No. 20).) RCI Herzog sent a letter to Defendant outlining its request and a proposed Joint Check Agreement for Defendant to sign and forward to Plaintiff for its signature. The letter explained that "[t]he agreement states that Vinson Brothers is responsible for reporting to RCI Herzog by the 2nd day of each month the hours that are to be submitted to Northwest Administrators, Inc. for the previous month." (Nov. 14, 2005 Letter of Robyn Austin to Vinson Brothers (Dkt. No. 16-3).)

Defendant interpreted the Joint Check Agreement as relieving it of its obligations to pay and report to the benefit trust directly. (*See* Earl Vinson Decl. ¶ 5 ("[I]t was clearly understood by us . . . that once the Joint Check Agreement was in place, we were to pay only via joint check, when and as we received such checks.") (Dkt. No. 16).)

After the initiation of this lawsuit, Defendant made all the relevant payments and provided the monthly accounting records requested by Plaintiff. The main issue before this Court is whether Plaintiff is entitled to liquidated damages, interest, and attorney's fees and costs pursuant to the Trust Fund Agreement and ERISA.

**II.   STANDARD OF REVIEW**

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions, and provides in relevant part, that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether an issue of fact exists, the Court must view

ORDER – 2

all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable fact-finder to find for the non-moving party. *Anderson*, 477 U.S. at 248. The moving party bears the burden of showing that there is no evidence which supports an element essential to the non-movant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In order to defeat a motion for summary judgment, the non-moving party must make more than conclusory allegations, speculations or argumentative assertions that material facts are in dispute. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994).

### III.     ANALYSIS

#### A.     Liability for the Underlying Claims

It is undisputed that the initial, pre-Joint-Check agreements required Defendant to make monthly payments and provide accounting to Plaintiff. Thus, the first question is whether the Joint Check Agreement discharged Defendant's liability under the original agreements.

Nothing in the plain language of the contract discharges these obligations. The agreement states:

> Prime Contractor hereby agrees that payments made to Subcontractor for . . . contributions . . . will be made payable jointly to Subcontractor and Northwest Administrators, Inc. until such time as final lein release for monies owed by Subcontractor . . . is secured from Northwest Administrators, Inc., Prime Contractor further agrees to deliver said payments to Subcontractor to endorse and in turn forward to Northwest Administrators, Inc. by Subcontractor. . . .
>
> Subcontractor is responsible for reporting to Prime Contractor by the 2nd day of each month the hours that are to be submitted to Northwest Administrators, Inc. for the previous month.

(Joint Check Agreement (Dkt. No. 16-3).) In no way does this language state that Defendant was relieved of its previous duties to Plaintiff.

Defendant apparently thought that the general contractor, RCI Herzog, would assume Defendant's trust-related obligations by simply writing the trust a "joint check" for the amount of funds that Defendant owed the trust. (*See* Earl Vinson Decl. ¶ 5 (Dkt. No. 16).) This confusion appears to stem from

ORDER – 3

Defendant's misreading of the term "joint check," which is commonly used in the construction industry. Black's Law Dictionary defines the term as follows:

> **joint-check rule.** The principle that, when an owner or general contractor issues a check that is made jointly payable to a subcontractor and the subcontractor's materialman, the materialman's indorsement on the check certifies that it has been paid all amounts due to it, up to the amount of the check. • This rule protects the owner or general contractor from lien foreclosure by a materialman who was not paid by the subcontractor. By issuing a joint check, the owner or general contractor is not left merely to hope that the subcontractor pays all the materialmen. And the materialman is protected because it can refuse to indorse the check until it is satisfied that the subcontractor will pay it the appropriate amount.

Black's Law Dictionary (8th ed. 2004); *see also Post Bros. Constr. Co. v. Yoder*, 569 P.2d 133, 135 (Cal. 1977) ("The use of joint checks is well established by custom and practice in the construction industry.")

Defendant's interpretation is not supported by a close reading of the language of the Joint Check Agreement. While it is unfortunate that Defendant apparently did not understand the general purpose or specific language of the Joint Check Agreement it signed, its unsupported interpretation of the contract's unambiguous terms cannot relieve it of its previously existing contractual obligations. Thus, summary judgment is appropriately entered on behalf of the benefit plan regarding its claims for delinquent contributions and accounting.

### B.     Attorney's Fees

ERISA provides for attorney's fees once judgment in favor of a benefit plan has been awarded. 29 U.S.C. § 1132(g)(2). The language of the parties' contract likewise provides for fees. Defendant argues that Plaintiff should be estopped from obtaining attorney's fees incurred in this action because Defendant reasonably (if incorrectly) interpreted the Joint Check Agreement based on Plaintiff's "misrepresentations." However, the only alleged "misrepresentations" are the unambiguous language of the contract itself—not any oral statements or other representations by Plaintiff's agents. Further, the language was drafted by RCI Herzog, not Plaintiff. Indeed, it was Defendant who forwarded the contract (and any ambiguous language contained therein) to Plaintiff for signature. As such, the language of this contract provides no justification for the invocation of estoppel to bar Plaintiff's claim for attorney's fees

ORDER – 4

and related costs.

Thus, Plaintiff is entitled to liquidated damages, interest, and attorney's fees and costs pursuant to the Trust Fund Agreement and ERISA. The Court has reviewed the amount of fees and costs sought by Plaintiff and finds them reasonable.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Partial Summary Judgment. Plaintiff is hereby awarded the following amounts: liquidated damages of $8,917.41, pre-judgment interest of $462.73, attorneys fees of $12,265.70, and costs of $396.65, for a total of $22,042.49, together with interest accruing thereupon at varying annual rates from today's date until fully paid.

SO ORDERED this 7th day of August, 2007.

_John C. Coughenour_
John C. Coughenour
United States District Judge

ORDER – 5